RENDERED: AUGUST 7, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0306-MR

FAITH SHAWHAN                                                                      APPELLANT

v.

APPEAL FROM CUMBERLAND CIRCUIT COURT
HONORABLE DAVID WILLIAMS, JUDGE
ACTION NO. 24-CI-00058

TUCKER PARISH                                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND A. JONES, JUDGES.

JONES, A., JUDGE: Faith Shawhan ("Mother") appeals from the Cumberland Circuit Court's December 30 2024, Findings of Fact, Conclusions of Law, and Order establishing custody and timesharing for the two minor children she shares with Tucker Parrish ("Father"). Mother does not challenge the trial court's factual

findings. Rather, she argues that the trial court misapplied KRS[1] 403.270 by failing to first apply the presumption in favor of equal parenting time.

Although Mother disagrees with the weight the family court assigned to certain evidence and the conclusions it ultimately reached, those determinations were within the trial court's broad discretion. Because the trial court applied the correct legal standard, made findings supported by substantial evidence, and did not manifestly abuse its discretion in fashioning a timesharing schedule it determined to be in the children's best interests, we affirm.

## II. BACKGROUND

Mother and Father are the parents of two minor children: M.T.P., born in December 2021, and C.P.P., born in May 2024. The parties were never married but previously lived together and jointly cared for the children. Around the end of January 2024, after the parties discontinued their relationship, M.T.P. began living with Father and his family, while C.P.P. stayed with Mother.[2]

On October 4, 2024, Father filed a petition in Cumberland Circuit Court seeking custody and timesharing orders concerning the children. The trial court conducted an evidentiary hearing on October 29, 2024, at which it heard

---

[1] Kentucky Revised Statutes.

[2] Mother also has two older children from prior relationships. At the time of the hearing, her son resided with her, while her daughter did not, having previously been removed from Mother's care following a Cabinet investigation.

testimony from Mother, Father, social workers, law enforcement, and various family members and acquaintances of the parties.

The evidence presented at the hearing showed that Father was employed, maintained stable housing with his grandparents, and had substantial family support available to assist with childcare. Since January 2024, M.T.P. had primarily resided with Father in a multigenerational household where she enjoyed a close relationship with Father and his extended family. The testimony indicated that the family maintained a regular routine that included shared meals, church attendance, and other family activities. Father testified that he was actively involved in M.T.P.'s daily care, and no witness expressed concerns regarding his ability to provide for her physical, emotional, or developmental needs. Although Father had a prior conviction for possession of methamphetamine and remained on probation, he testified that he had been sober for approximately fifteen months.

Father also testified that he and Mother have difficulty coparenting and communicating. Although the parties had been involved in physical altercations during their relationship, Father testified that neither had caused serious physical injury to the other. Due to the parties' ongoing conflict, Father's grandmother frequently serves as an intermediary for communications concerning the children.

The evidence further showed that Mother had experienced significant instability in both her housing and employment. At the time of the hearing, Mother was residing with her former stepmother, an arrangement that had begun less than one week earlier. Before moving there, Mother had lived with an acquaintance, Jennifer Jessie, and then with her father. Mother testified that she was performing part-time cleaning work and was participating in a job-training program that she hoped would lead to full-time employment in about three months. Mother also acknowledged prior substance abuse issues, testified that she possessed a medical marijuana card, and admitted continued marijuana use. However, she denied that she did so around the children.[3]

The trial court also heard evidence regarding Mother's supervision and care of the children, her relationship with Father's family, and her financial instability. Evidence was presented that Mother had entered guilty pleas to harassing communications charges involving Father's mother and grandmother. Additional testimony raised concerns regarding Mother's judgment, supervision of children in her care, and use of marijuana while pregnant with C.P.P. Other witnesses disputed or minimized some of those concerns.

---

[3] Mother's former roommate, Jennifer Jessie, however, testified that she had observed Mother smoking marijuana around C.P.P.

The trial court also heard evidence that Mother was involved in an ongoing Cabinet matter arising from concerns regarding the supervision of children in her care. During the investigation, Mother's twelve-year-old son was found home alone, and marijuana was discovered in the residence in close proximity to the boy. Mother testified that she had substantially complied with the resulting case plan, with housing remaining the principal unresolved issue.

The trial court also heard testimony from Cabinet employees Bailey Scott and Lori Slaughter, both of whom testified they had no current concerns regarding either parent's ability to care for the children and believed the children's basic needs were being met.

Following the hearing, the trial court awarded the parties joint custody, designated Father as the children's primary residential parent, and established a parenting schedule under which Mother would exercise parenting time every Tuesday from 4:00 p.m. until 6:00 p.m.; on alternating weekends from 10:00 a.m. until 4:00 p.m. on Saturday during one week; and from 12:00 p.m. until 6:00 p.m. on Sunday during the alternate week, together with holiday parenting time as set forth in the order. The order was accompanied by detailed findings of fact and conclusions of law explaining the trial court's decision. This appeal followed.

## II. STANDARD OF REVIEW

As an initial matter, we note that Mother does not challenge the trial court's factual findings. Indeed, she expressly acknowledges in her brief that "the trial court's findings of fact were correct." Rather, Mother contends that the trial court improperly applied KRS 403.270 to those facts when fashioning a parenting-time schedule. In doing so, Mother primarily disputes the significance the trial court attributed to certain evidence and the weight it afforded the testimony of various witnesses.

Questions of law, including whether the trial court correctly applied KRS 403.270, are reviewed *de novo*. *Kentucky Properties Holding, LLC v. Sproul*, 507 S.W.3d 563, 569 (Ky. 2016). However, once the trial court has made findings supported by substantial evidence and applied the correct legal standard, we must be highly deferential to its determination regarding parenting time and may reverse only if it constitutes "a manifest abuse of discretion." *Hempel v. Hempel*, 380 S.W.3d 549, 551 (Ky. App. 2012); *McGregor v. McGregor*, 334 S.W.3d 113, 116 (Ky. App. 2011) ("This Court will only reverse a trial court's determinations regarding a parenting schedule if they constitute a manifest abuse of discretion or were clearly erroneous in light of the facts of the case."). Under a manifest abuse of discretion standard, the trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion. *Id.*

## II. ANALYSIS

### *A. Mother's Request for Judicial Notice of Subsequent Events*

Before addressing Mother's substantive arguments, we first consider her request for this Court to take judicial notice of information concerning events that allegedly occurred after the trial court entered the order under review, including subsequent criminal charges involving Father and witness Jennifer Jessie and Father's incarceration. *See* KRE[4] 201.

"While judicial notice may be taken at any stage of the proceedings, KRE 201(f), it is to be used cautiously by appellate courts." *Commonwealth, Cabinet for Health & Fam. Servs. v. Ivy*, 353 S.W.3d 324, 335 (Ky. 2011) (internal quotation marks omitted). The events identified by Mother occurred after the evidentiary hearing and after the trial court entered the order presently under review. The trial court did not possess a crystal ball, and we will not engage in speculation regarding how subsequent events might have affected its decision had they occurred earlier. Our review is confined to the record actually created below and the issues presented to the trial court. *Id*.

This is not to say that Mother is without a remedy should subsequent events materially affect the children's best interests. Pursuant to KRS 403.320(3), a party may seek modification of a parenting-time order based upon changed

---

[4] Kentucky Rules of Evidence.

-7-

circumstances arising after entry of the original order, and Mother may appeal any such order that is adverse to her. Likewise, should further proceedings occur, the admissibility of any subsequent convictions for impeachment purposes will be governed by the Kentucky Rules of Evidence and determined by the trial court in the first instance. We therefore confine our review to the record before the trial court at the time it rendered the decision under review. *Dunn v. Solomon Found.*, 723 S.W.3d 711, 718 (Ky. 2025).

### B. The Trial Court Properly Applied KRS 403.270

Mother's sole argument on appeal is that the trial court failed to properly apply KRS 403.270 when determining custody and parenting time. Specifically, Mother contends that the trial court failed to begin its analysis with the statutory presumption that joint custody and equally shared parenting time were in the children's best interests and instead proceeded directly to an evaluation of the statutory best-interest factors. According to Mother, this error infected the remainder of the trial court's analysis and resulted in an improperly restrictive parenting-time schedule.

Father responds that the trial court correctly recognized and applied the statutory presumption, thoroughly considered the factors set forth in KRS 403.270(4), and ultimately determined that he had rebutted the presumption by a preponderance of the evidence. Father maintains that Mother's argument is, in

substance, a disagreement with the weight the trial court assigned to the evidence and the conclusions it drew therefrom.

KRS 403.270(2) provides, in relevant part: "Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interests of the child." In his petition, Father expressly asserted that the presumption had been rebutted and requested that the trial court award a parenting schedule that was not equally shared. To determine whether Father had met his burden, the trial court was necessarily required to evaluate the evidence in light of the statutory best-interest factors set forth in KRS 403.270(4).

Contrary to Mother's argument, a careful review of the trial court's findings of fact, conclusions of law, and order demonstrates that it applied the statutory presumption. The trial court began its conclusions of law by stating that "[t]his Court is to determine the best interest of the children with *equal consideration given to each parent.*" (Emphasis added.) While the trial court did not employ the precise language of KRS 403.270, its statement reflects the premise underlying the statutory presumption: that neither parent begins the analysis with an advantage over the other. More importantly, after conducting a detailed review of the statutory factors, the trial court expressly concluded that Father had "overcome the presumption of 50/50 timesharing."

-9-

The trial court's findings reveal that it did not disregard the presumption; rather, it concluded that the presumption had been rebutted. In reaching that determination, the trial court relied upon a number of factors, including the parties' inability to effectively coparent, Mother's housing and employment instability, Mother's harassment of Father's family members, the children's ages, Father's demonstrated stability, and evidence concerning Mother's judgment and parenting decisions. Whether another factfinder might have weighed those considerations differently is not the question before us.

Indeed, Mother does not contend that any of these findings are clearly erroneous. Rather, she argues that the trial court should have afforded greater weight to the testimony of the Cabinet witnesses and less weight to the testimony of Father and his witnesses. However, the weighing of evidence and assessment of witness credibility are matters committed to the trial court's discretion. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

We are not permitted to reweigh that evidence on appeal. Moreover, it is important to recognize, as our predecessor Court observed decades ago, that a child's "interest and welfare" encompasses considerations beyond whether a parent is able to provide food, shelter, and clothing. *Gaffeney v. Gaffeney*, 223 S.W.2d 583 (Ky. 1949).

Mother also relies heavily upon several unpublished opinions that she contends support reversal. Ultimately, however, custody and parenting time "must be determined by the facts in each particular case." *Aubrey v. Aubrey*, 198 S.W.2d 209, 210 (Ky. 1946). The unpublished decisions cited by Mother turn upon their own particular facts and do not alter the standards governing our review. Our lodestar remains the text of KRS 403.270.

Here, the trial court carefully addressed each statutory factor and explained the evidence it found persuasive. Although Mother disagrees with the trial court's ultimate conclusions, those conclusions were supported by evidence presented at the hearing. The trial court heard testimony that Mother had experienced significant housing instability, that concerns had been raised regarding her supervision of children in her care, that she continued to use marijuana,[5] that she had engaged in harassing conduct toward Father's family members, and that the parties were unable to effectively coparent. The trial court also heard evidence

---

[5] Pursuant to KRS 218B.045(2), a medical cannabis cardholder "otherwise entitled to custody of, or visitation time or parenting time with, a minor child shall not be denied that right, and there shall be no presumption of abuse, neglect, or dependency for conduct permitted under this chapter unless the person's actions in relation to medicinal cannabis created an unreasonable danger to the safety of the minor child as established by clear and convincing evidence." Our reference to Mother's marijuana use should not be construed as suggesting that her possession of a medical cannabis card, standing alone, supports a restriction on custody or parenting time. Rather, the trial court heard testimony that Mother smoked marijuana in a closed bedroom while C.P.P. was present and evidence that marijuana was discovered in proximity to Mother's son when he was found home alone during a Cabinet investigation. The trial court was entitled to consider that evidence, together with all other evidence bearing upon the children's best interests.

that Father had established a stable home environment, maintained steady employment, enjoyed substantial family support, and had successfully cared for M.T.P. for an extended period. It was the trial court's prerogative to determine what weight should be afforded that evidence and, based upon its assessment of the evidence as a whole, to conclude that Father had rebutted the presumption in favor of equal parenting time.

Again, we reiterate that our review of the trial court's findings of fact, conclusions of law, and order as a whole convinces us that the trial court began its analysis with the presumption required by KRS 403.270. While it may have been preferable for the trial court to expressly state at the outset that it was applying the statutory presumption in favor of joint custody and equal parenting time, the law does not require trial courts to employ magic words or follow a prescribed script. Appellate review focuses on whether the trial court applied the correct legal standard, not whether it recited that standard in a particular order. We place substance over form. Here, the trial court's repeated references to equal consideration of the parents, its detailed analysis of the statutory best-interest factors, and its ultimate conclusion that Father had rebutted the presumption leave no doubt that the trial court understood and correctly applied the governing statute.

### C. The Parenting-Time Schedule Was Not a Manifest Abuse of Discretion

Finally, while the parenting-time schedule awarded to Mother is less than equal, KRS 403.270 does not mandate any particular schedule. Rather, the statute provides that "[i]f a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or *de facto* custodian has with the child and is consistent with ensuring the child's welfare." KRS 403.270(2). Once the trial court determined that Father had rebutted the statutory presumption by a preponderance of the evidence, it remained the trial court's responsibility to fashion a parenting-time schedule that maximized each parent's time with the children while remaining consistent with their welfare. The statute provides no formula for doing so, nor does it prescribe a minimum or maximum number of hours, days, weekends, or overnights that must be awarded in any particular case.

Reasonable minds may differ regarding the amount of parenting time that should be awarded once a court concludes that equal parenting time is no longer in a child's best interests. A disappointed litigant can almost always argue that an additional day should have been awarded here, an overnight added there, or a weekend extended elsewhere. Such determinations, however, are precisely the type of fact-intensive judgments trial courts are uniquely situated to make. For that reason, our review is limited to whether the parenting-time schedule constitutes a

manifest abuse of discretion, not whether we might have fashioned a different schedule had we been sitting as the trial court.

The schedule imposed by the trial court is unquestionably restrictive. However, the trial court's findings reflect that it viewed Mother as presenting ongoing concerns relating to housing instability, lapses in supervision of children in her care, and the misuse of resources intended to meet the children's needs. The trial court also expressed concern regarding Mother's judgment as it related to marijuana use and storage around children. At the same time, the trial court found that Father provided a more stable and structured environment for the children.

Given those findings, we cannot say it was unreasonable for the trial court to conclude that Mother should receive less than equal parenting time. Importantly, the trial court did not eliminate Mother's role in the children's lives. Rather, it awarded her recurring weekly parenting time that it reasonably believed would permit her to maintain and foster her relationship with the children while addressing the concerns identified in its findings. Whether another judge might have awarded somewhat more, or somewhat less, parenting time is beside the point. The question before us is not whether the trial court selected the best conceivable schedule, but whether the schedule it selected falls within the range of reasonable outcomes permitted by the evidence and the law. We conclude that it does.

Finally, although the order establishes a permanent parenting-time schedule, it is not etched in stone. Parenting-time determinations remain subject to modification as circumstances change. Should Mother achieve greater stability in her housing, employment, or overall circumstances, she remains free to seek modification pursuant to KRS 403.320. The trial court's order reflects its assessment of the children's best interests based upon the evidence before it at the time of the hearing. On this record, we find no manifest abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, the order of the Cumberland Circuit Court is AFFIRMED.

THOMPSON, CHIEF JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING: I respectfully dissent. While I recognize that the trial court has broad discretion in resolving timesharing matters, I conclude the trial court manifestly abused its discretion here.

A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Ryan v. Ryan*, 473 S.W.3d 637, 639 (Ky. App. 2015) (quoting *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000)) (internal quotation marks omitted).

The trial court's decision here is not supported by sound legal principles. KRS 403.270(2) expressly states that there is a rebuttable presumption that joint custody and equal timesharing is in a child's best interest. It also requires that: "If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare." In my view, the trial court's timesharing order did not substantively comply with these requirements in KRS 403.270(2).

The trial court's timesharing order does not mention the rebuttable presumption in KRS 403.270(2) other than cursorily stating in its conclusion that the presumption for equal timesharing was rebutted due to the children's age. Yet there is no valid authority which allows for the rebuttable presumption of equal timesharing being in the children's best interest to be overcome simply by the children's age. For example, the tender years presumption, which favored mothers of very young children when the parents were equally fit, was abrogated by statute nearly half a century ago. *See Jones v. Jones*, 577 S.W.2d 43, 45 n.1 (Ky. App. 1979) (noting 1978 amendment to KRS 403.270 abrogated tender years presumption). More importantly, the version of KRS 403.270(2) in effect during these proceedings does not expressly limit the applicability of the rebuttable

presumption of equal timesharing being in a child's best interest to children of any particular age.

Also, the trial court's order does not even mention its statutory obligation to maximize the timesharing of a parent not awarded equal timesharing in a manner consistent with the children's best interests. Nor does the order articulate why, assuming that equal timesharing is not in the children's best interest, the maximum parenting time it could award Mother consistent with the children's best interests is for just eight hours each week. This lack of articulation about why the trial court saw fit to limit Mother's timesharing to just eight hours per week is especially concerning given the fact that Mother was the younger child's primary caregiver prior to the modification.

Furthermore, the instant case is substantially distinguishable from *Barnett v. White*, 584 S.W.3d 755, 756 (Ky. App. 2019), in which we upheld a less than equal timesharing order. Notably, the parent who was not named the primary residential custodian in *Barnett* received "two overnights a week which is sufficient to promote his relationship with child while promoting stability for child by continuing [other parent's] role as her primary caregiver." *Id.* at 762. Here, Mother was previously the younger child's primary caregiver, yet the trial court awarded Mother substantially less parenting time than the parent in *Barnett* who previously had only limited contact with the child. *See id*. at 756, 760 (noting

-17-

appealing parent previously had temporary supervised visitation every other week and had gone four months without visiting the child at one point).

Currently, only limited published precedent exists regarding the application of the obligation to maximize the parenting time of a parent awarded less than equal timesharing under KRS 403.270(2) (as amended in 2018). Yet this case is also substantially distinguishable from non-binding, unpublished precedent in which an unequal timesharing arrangement was affirmed despite an appellant's claims that the trial court failed to maximize his/her parenting time.[6]

I further note that the majority Opinion explicitly states that the amount of timesharing awarded to Mother is restrictive. Yet the trial court made no finding that spending time with Mother would seriously endanger either child's health. While perhaps the serious endangerment standard set forth in KRS 403.320(1) and KRS 403.320(3) does not expressly apply to an initial custody and timesharing determination in which the parties share joint custody as opposed to an initial award of sole custody to the other parent or a modification of timesharing, I still view the trial court's award of extremely limited timesharing of just eight

---

[6] *See Nelson v. Jennings*, No. 2019-CA-1522-ME, 2020 WL 6112915, at *8–9 (Ky. App. Oct. 16, 2020) (unpublished) (upholding less than equal timesharing despite assertion of failure to maximize parent's time with child since parent received "lion's share" of weekend time with child and parent's weekday parenting time was tailored to parent's work schedule and trial court concluded child benefitted from consistency in not altering prior timesharing schedule). Although this unpublished opinion is not binding authority pursuant to Kentucky Rules of Appellate Procedure ("RAP") 40(D)(1) and RAP 41(A), we may consider it as persuasive authority.

hours per week for Mother as an abuse of its discretion given the lack of finding of serious endangerment.[7] After all, how can it be fair for a joint custodian to be entitled to less protection against unduly restricted time with his/her child/ren than a non-custodial parent and be deprived of non-restrictive parenting time without a finding of serious endangerment?

Thus, I would, at a minimum, vacate the trial court's timesharing order with directions to construct a timesharing schedule which maximizes Mother's parenting time consistent with the children's best interests.

BRIEFS FOR APPELLANT:

Alison Nicole Adkins
Somerset, Kentucky

Evan B. Smith
Prestonsburg, Kentucky

BRIEF FOR APPELLEE:

Holly Long Parrigin
Burkesville, Kentucky

---

[7] *See Valencia v. Sherrill*, No. 2018-CA-001636-ME, 2019 WL 4387381, at *4–5 (Ky. App. Sep. 13, 2019) (unpublished) (upholding restricted visitation for non-custodial parent due to properly supported findings adequately addressing whether child's health was seriously endangered by visitation). *Accord Allen v. Amos*, No. 2018-CA-001592-ME, 2019 WL 5293654, at *3 (Ky. App. Oct. 18, 2019) (unpublished).